UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:00-CV-222

UNITED STATES OF AMERICA, ex rel.
DENNIS LeFAN, et al.,                                        PLAINTIFFS and RELATORS

V.

GENERAL ELECTRIC COMPANY, et al.                            DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court upon motions for attorneys fees by Relators for the law firms of Helmer, Martins, Rice & Popham Co., L.P.A (DN 77); Priddy, Cutler, Miller, and Meade PLLC; and Volkema Thomas, L.P.A. (DN 89)[1]. Fully briefed, these matters are ripe for consideration. For the following reasons, the fee petitions are **GRANTED** in part and **DENIED** in part.

## I. FACTS

The three above-referenced law firms represented the Relators, seven production employees at the General Electric Aircraft Engine turbine airfoil component manufacturing plant in Madisonville, Kentucky, in this action which was brought under the *qui tam* provisions of the False Claims Act ("FCA"). The original complaint was filed in October 2000. In 2006, the United States intervened as a co-plaintiff in the case, and shortly thereafter, in July 2006, a global settlement was reached. The settlement agreement provided for the dismissal with prejudice of the *qui tam* claims and release of liability of the Defendants, in exchange for the payment of $11.5 million to the United States. The Relators' share of the settlement was $2,357,500.00.

---

[1]The Relators' motion for attorneys' fees for Priddy Culter and Volkema Thomas is actually a motion for interim attorneys' fees because the retaliation claim of one of the relators is yet to be resolved. However, an interim award of attorneys' fees and expenses can be appropriate where a party has finally prevailed on a discrete issue and the Defendants do not appear to dispute the ripeness of this motion. See, e.g., <u>Buckhannon Board & Care Home, Inc. v. W.Va. Dept. of Health & Human Resources</u>, 532 U.S. 598, 603-604 (2001).

The Relators have now filed motions for attorneys' fees and expenses for the work performed by the law firms of Priddy, Cutler, Miller, and Meade, L.L.C ( "Priddy Cutler"), of Louisville, Kentucky; Helmer, Martins, Rice, & Popham Co., L.P.A. (the "Helmer firm"), of Cincinnati, Ohio; and Volkema Thomas L.P.A. ("Volkema Thomas"), of Cincinnati, Ohio.  Alton D. Priddy was the first attorney contacted by the Relators in this case.  He was contacted in the summer of 2000, approximately four months before the first complaint was filed.  In the course of his representation, Mr. Priddy conducted extensive interviews with the Relators and two experts; reviewed and analyzed the documents and manuals provided by the Relators; and prepared presentations to the United States regarding the facts underlying the *qui tam* allegations. In 2002, he sought the involvement of Frederick M. Morgan, Jr., then of the Helmer firm, as co-counsel. Over the next three years, both firms represented the Relators and supported the government investigation.  In January 2005, Mr. Morgan and Mary Jones, a paralegal who had devoted substantial time to the matter, left Helmer and joined Volkema Thomas.  Thus, between January 2005 and the settlement in July 2006, the Relators were represented by both Priddy Cutler and Volkema Thomas.

In the motions before the Court, the Relators seek an award to Priddy Cutler of $ 758,192.50 in attorneys fees' and reimbursement of $25,366.66 in expenses; an award to the Helmer firm of $1,221,458.00 in attorneys' fees and reimbursement of $77,426.68 in expenses; and an award to Volkema Thomas of $499,903.55 in attorneys' fees and reimbursement of $23,955.82 in expenses.

## II. DISCUSSION

When the government intervenes and prevails in a qui tam case, the FCA dictates that a relator receive an award of "reasonable attorneys' fees and costs against the defendant." 31 U.S.C. §3730(d)(1). According to the Sixth Circuit, a reasonable fee is one that is "*adequately*

2

*compensatory to attract competent counsel yet which avoids producing a windfall for lawyers*."
Gonter v. Hunt Valve Co., 2007 U.S. App. LEXIS 29229, *13 (6th Cir. 2007)(quoting Geier v.
Sundquist, 372 F.3d 784, 789 (6th Cir. 2004)). The starting point for determining a reasonable fee
is the lodestar, which is the product of the number of hours billed and a reasonable hourly rate. Id.
"To justify any award of attorneys' fees, the party seeking compensation bears the burden of
documenting its work." Id. at *15.

**A. Reasonable Hourly Rates**

The reasonableness of the rate charged is usually determined by its congruity with "those
prevailing in the community for similar services by lawyers of reasonably comparable skill,
experience, and reputation." Blum v. Stenson, 465 U.S. 886, 896, n.11 (1984). However, the Sixth
Circuit has held that district courts are free to look to a national market, an area of specialization
market, or any other market they believe is appropriate to fairly compensate particular attorneys in
individual cases. Sigley v. Kuhn, 2000 U.S. App. LEXIS 1465, *18 (6th Cir. 2000)(citing Louisville
Black Police Officers Organization, Inc. v. City of Louisville, 700 F.2d 268, 278 (6th Cir. 1983)).
A prevailing party may establish the necessity of retaining outside, non-local counsel by
demonstrating that a good-faith effort to locate local counsel failed or that non-local counsel
possessed specialized expertise in the matter litigated. Id.

The Relators seek hourly rates ranging from $185 to $475 for the attorneys who worked on
this matter. Specifically, the Relators seek around $200 per hour for non-partners; around $325 per
hour for two Helmer partners; $375 per hour for Alton Priddy and three Volkema Thomas partners;
and between $425-$475 for Frederick Morgan, Paul B. Martins, and James B. Helmer. Although the
Relators concede that these raters are higher than those generally charged by attorneys within the

3

Court's jurisdiction, they argue that these rates are reasonable based upon 1) the specialized nature of False Claims Act cases; 2) the lack of experienced False Claims Act litigators within the Court's jurisdiction; and 3) the reputation and credentials of the attorneys and law firms involved in this matter.  And, indeed, the Relators have presented evidence in the form of attorney declarations to support each of these contentions. See, e.g., DN 77, Attach. 1, Helmer Declaration; DN 89, Attach. 2, Priddy Declaration; DN 89, Attach. 7, Morgan Declaration.

In response, the Defendants argue that rates sought by the Relators are so unreasonable as to be "astounding" and, specifically, that the Relators have failed to carry their burden of showing that they are entitled to out-of-state rates for their counsel because there were no counsel in this district capable of handling the action.  They argue that "reasonable rates" should not be based upon the going rate for nationally-renowned *qui tam* litigators, such as certain attorneys retained by the Relators, but upon the going rate for attorneys in the Western District of Kentucky who specialize in complex federal or commercial litigation. They note that even the Relators' own expert stated in her declaration that: "I have no question that many capable complex-litigation lawyers are capable of professionally handling a *qui tam* case" (DN 89, Durrell Declaration, ¶ 8) and that there are Louisville-based attorneys who have represented parties in *qui tam* actions (DN 94, Attach. 1, Bush Declaration).  The Defendants further argue that the Relators' attorneys should not be paid their claimed 2007 rates for all the work they have done on the case since 2000, even though the Relators argue that the 2007 rates are necessary to compensate their attorneys for delay in receiving payment. Ultimately, the Defendants argue that the rates charged here should be based upon the average hourly rates charged by Kentucky litigators, on a year-by-year basis, and with respect to the years of experience of each attorney. The Kentucky rates which the Defendants urge the Court to use, and

which were compiled by a defense expert, range from $117 per hour for an attorney with less than

two years experience in 2000 to $325 per hour for attorney with more than 21 years experience in

2007. Using these "local rates," the Defendants argue that Priddy Cutler should be awarded

$516,515.40 (as opposed to the requested $760,442.50); that the Helmer firm should be awarded

$786,493.50 (as opposed to the requested $1,283,344.75); and that Volkema Thomas should be

awarded $376,730.12 (as opposed to the requested $520,111.05).

Based on the above-mentioned arguments and law, the Court finds the following to be

reasonable. The Court will reduce the hourly rate the attorneys at Helmer and Volkema Thomas (the

Cincinnati firms) to correspond with the hourly rates of attorneys at Priddy Cutler (the Louisville

firm) since the Helmer and Volkema Thomas attorneys chose to practice within this Court's

jurisdiction. This means that, generally, partners will receive $250 per hour; associates will receive

$200 per hour; and the rates of paralegals and others will be adjusted accordingly. The exceptions

to this general formula are that the Court will allow the law firms to recover 1) $400 per hour for

the work of Frederick Morgan based upon his expertise and national practice in False Claims Act

cases; 2) $325 per hour for the work of Alton Priddy, the initial and primary attorney in this case

(which is more than his peers at Priddy Cutler charge but less than $375 per hour he claims as his

"billing rate for the matter before this Court"; 3) $325 per hour for the work of James Helmer, based

upon his experience and expertise; and 4) $200 for the work of paralegal Mary Jones. Finally, the

Court will use the 2007 rates of Priddy Cutler's attorneys to compensate the law firms for their delay

in receiving payment. The Court believes that the utilization of this formula will produce hourly

rates that are "*adequately compensatory to attract competent counsel yet which avoid producing a*

*windfall for lawyers.*"

5

**B. Fee Reduction for Vagueness, Duplicative Work, Administrative Work, Etc.**

The Defendants next argue that the attorneys' fees sought by Relators should be reduced because portions of each firms' billing records contain "vague, generalized, heavily redacted, and completely uninformative entries." Due to these deficient entries, the Defendants argue that the Helmer firm's fees should be reduced by $89, 453.54; that the Priddy firm's fees should be reduced by $109,699; and that the Volkema firm's fees should be reduced by $16,144.08. The Court finds, however, that the Defendants have not pointed the Court to any entries so deficient as to warrant fee reductions. The entries cited by the Defendants adequately explain how attorney time was spent. See, e.g. DN 129, Ex. G. Further, the Court accepts the Relators' position that these entries were only redacted to the extent necessary to protect attorney-client privilege. As the Supreme Court has noted: "Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time and expenditures." Hensley v. Eckerhart, 461 U.S. 424, 437, n.12 (1983).

Further, to the extent that the Defendants argue that the Relators' fees should be reduced to account for the billing of duplicative work, the Court rejects this argument since the Defendants previously represented to the Court that they were not attacking the number of hours spent on particular issues, or the case as a whole, or claiming duplication. See, e.g., DN 94, p. 15.

The Defendants also that argue because the Relators are not entitled to attorneys' fees for clerical or administrative tasks, the amount awarded to each law firm should be reduced by the amount established by Defendants' Exhibit I. After reviewing the record, however, the Court finds that there is no clear indication that the Relators were inappropriately billed for clerical or administrative tasks. While some of the billed tasks, such as reviewing and organizing documents

6

and preparing binders for witness interviews may appear clerical, the Court accepts the Relators' argument that these tasks had to be performed by an attorney or paralegal familiar with facts and law of the case. The one exception involves a stipulation by Priddy Cutler that Mr. Priddy's time should be decreased by .20 hours since that time involved the reservation of a meeting room.

The Defendants next argue that Priddy Cutler and Volkema Thomas should not be allowed to recover attorneys' fees relating to factual investigations undertaken after the Government and the Defendants began negotiating a settlement agreement on November 23, 2005. The Court rejects this argument and finds that it was reasonable for the Relators' attorneys to continue preparing for litigation until the final settlement agreement was signed in July 2006, especially when such work was specifically requested by the Government.

The Defendants also argue that the Helmer firm should not be awarded fees for the hours billed relating to a dispute with a Third-Party Relator over who was the "first-to-file." The Helmer firm does not appear to dispute this contention and, thus, the Court will reduce Helmer's hours accordingly. See DN 129, Ex. K. According to the Defendants' undisputed calculations, the amount which should be deducted from Helmer's total billings for this work is $10,967.75.

The Defendants' next argument is that the amount ultimately awarded to the Relators' attorneys should be reduced by 10% since some of the time entries in the billing statements were reconstructed "years after the fact and thus are totally unreliable." The Court declines to so reduce the award. Here, all three firms have submitted attorney affidavits stating that all billing statements were based upon contemporaneously maintained time logs and supplemented and verified by reviews of correspondence and memoranda files.

Next, the Defendants contend that Relators' counsel should not be awarded compensation

7

for time spent assisting the Government with the Government's investigation. The Defendants argue that the Relators have been more than compensated by the Government for their efforts and that allowing Relators' counsel to seek reimbursement under the FCA's fee-shifting provision would amount to "unreasonable and inappropriate double-dipping." The Defendants, however, have pointed to absolutely no case which supports this novel proposition. This may be because the False Claims Act itself states that prevailing relators are entitled to up to 30% of the proceeds of the action, *plus* reasonable expenses, costs, and attorney's fees. 31 U.S.C. § 3730(d). <u>Cook County v. United States ex re. Chandler</u>, 538 U.S. 119, 122-123 (2003); see also  <u>United States ex rel. Taxpayers Against Fraud v. General Electric</u>, 41 F.3d 1032, 1047 (6th Cir. 1994). Thus, even though the Relators here received $2,357,500.00 (20.5% of the total proceeds from the action) from the Government, the Defendants must still fully compensate the Relators' for their reasonable attorneys' fees, expenses, and costs.

## C. A Fee Enhancement

On the other side, the Relators ask the Court to increase the lodestar amount  awarded to the Priddy Cutler and Volkema law firms by 33%.  They argue that these firms are entitled to a fee enhancement based upon their attorneys' excellent performance in this case.  The Defendants argue that this is not the rare or exceptional case which warrants an upward adjustment of the lodestar. The Court agrees.

The Sixth Circuit recently considered the appropriateness of fee enhancements in False Claims Act actions. <u>Gonter v. Hunt Valve, Inc.</u>, 2007 U.S. App. LEXIS 29229 (6th Cir. 2007). In <u>Gonter</u>, the court stated:

> Fee enhancements are permissible in rare cases of "exceptional success." <u>Barnes v. City of Cincinnati</u>, 401 F.3d 729, 745 (6th Cir. 2005). The party seeking an

enhancement bears the burden of showing that such an adjustment is "necessary to the determination of a reasonable fee." <u>Blum v. Stenson</u>, 465 U.S. 886, 898, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). In the majority of cases, however, the quality of representation is "reflected in the reasonable hourly rate." <u>Id</u>.

<u>Id</u>. at \*28.  The court also noted the twelve factors, first enunciated by the Fifth Circuit in <u>Johnson v. Georgia Highway Express, Inc.</u>, that a court may consider in determining whether a reasonable fee should be enhanced, but concluded that these factors did not warrant an enhancement in the case before it.[2] <u>Id</u>. (citing <u>Johnson</u>, 488 F.2d 714, 717-719 (5th Cir. 1974)).  Although the plaintiff argued that an enhancement was appropriate based upon the $12.5 million settlement in the case and the attorneys' successful vindication of the goals underpinning the FCA, the court found that the case was distinguishable from other cases where "exceptional success" had been found, such as where a solo practitioner brought a previously unrecognized cause of action or where counsel had "remained active in litigation for over 15 years." <u>Id</u>. at 29 (citing <u>Brotherton v. Cleveland</u>, 141 F. Supp.2d 907, 913 (S.D.Ohio 2001); <u>McKenzie v. Kennickell</u>, 875 F.2d 330, 338-39 (D.C. Cir. 1989)).

Based on <u>Gonter</u>, the Court concludes that this is not the extraordinary case where a fee enhancement is warranted.  The reasonable attorneys' fee award set forth above adequately compensates the attorneys for their time, labor, skill, and success.

---

[2]The twelve <u>Johnson</u> factors are:(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

**D. Fees for Fee-Related Litigation**

Finally, the Defendants argue that the Relators' attorneys are not entitled to the full fees sought in connection with their fee applications. Specifically, they argue that the attorneys' are not entitled to fees incurred while pursing unsuccessful fee issues or calculated based upon out-of-state rates.  In <u>Gonter</u>, the Sixth Circuit explained how a district court should award fees for fee-related litigation.  2007 U.S. App. LEXIS 29229, *25-26.  After observing that "time spent in preparing, presenting, and trying attorney fee applications is compensable," the Court concluded that in the absence of unusual circumstances, compensation for preparing and "successfully" litigating a fee petition is limited to three percent of the hours of the main case.  <u>Id.</u>; see also <u>Coulter v. Tennessee</u>, 805 F.2d 146 (6th Cir. 1986).  In <u>Gonter</u>, the Court rejected the Defendants' argument that the Plaintiffs did not "successfully litigate" their fee petition since they were awarded less than the amount sought.  The Court stated that the Plaintiffs were awarded attorneys' fees "precisely because their petition was successful." <u>Id</u>. at *26.

Accordingly, the Court will award the Relators attorneys' fees for fee-related litigation based upon the reasonable rates set forth by the Court above.  The Court accepts that the Relators' attorneys' fees for the fee-related litigation do not exceed the 3% hourly limit since the Defendants do not argue to the contrary.

**E. Reimbursement for Costs and Expenses**

As noted above, the Relators seek reimbursement of $25,366.66 in expenses for Priddy Culter; reimbursement of $77,426.68 in expenses for the Helmer firm; and  reimbursement of $23,955.82 in expenses for Volkema Thomas.  The Defendants argue that these amounts should be reduced to the extent that they reflect charges for administrative or clerical tasks which are properly

10

part of a firm's overhead.

"Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and normally charged to their clients." Le Blanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998). Thus, courts have found that for expenses for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, facsimiles, and courier services are recoverable as part of attorneys's fees awards. See, e.g., Am. Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County, 278 F.Supp.2d 1301, 1328 (M.D. Fla. 2003). Reimbursement for office supplies, however, is generally not permitted because those expenses are considered part of office overhead. See, e.g. Wilder-Davis v. Bd. of County Comm'rs, 2000 U.S. Dist. LEXIS 22187, *20 (D. Kan. 2000).

Based on the above, the Court concludes that $200.11 should be deducted from Priddy Cutler's expenses and $12.50 should be deducted from the Helmer firm's expenses because said expenses are for office supplies. (See DN 129, Ex. L). Further, to the extent that Defendants argue that the price of computer programs purchased by the law firms for this action should be deducted from the claimed expenses, the Court disagrees. The Court accepts the Relators' argument that these programs were necessary and reasonable expenditures.

## VI. Total Awards

### PRIDDY CUTLER

| Attorney/Paralegal | Experience | Hours | Hourly Rate | Total |
|---|---|---|---|---|
| Alton D. Priddy | N/A | 1746.9 (-.2) | $325 | $ 567, 677.50 |
| Don C. Meade | partner | 24 | $250 | $ 6,000.00 |
| Hayes P. Haddix | associate | 458.2 | $200 | $ 91,640.00 |
| John C. Hardy | associate | 2.5 | $200 | $ 500.00 |
| Thomas Schulz | associate | 5.05 | $200 | $ 1,010.00 |
| Sheila Sprinkle | secretary | 51.25 | $35 | $ 1793.75 |
| Holly Windell | secretary | 61.75 | $35 | $ 2161.25 |

INTERIM  FEE  TOTAL:     $ 670, 782.50

INTERIM EXPENSES:     $ 25, 366.66

Office supplies:     (- $200.11)

**GRAND TOTAL:**     **$ 695, 949.05**

12

**THE HELMER FIRM**

| Attorney/Paralegal | Experience | Hours | Hourly Rate | Total |
|---|---|---|---|---|
| Frederick Morgan | N/A | 1049.55 | $400 | $ 419,820.00 |
| Mary Jones | N/A | 1248.85 | $200 | $ 249, 770.00 |
| James B. Helmer | partner | 328.30 | $325 | $ 106,697.50 |
| Paul B. Martins | partner | 17.10 | $250 | $ 4,275.00 |
| Julie W. Popham | partner | 321.80 | $250 | $ 80,450.00 |
| Robert Rice | partner | 92.30 | $250 | $ 23,075.00 |
| Kathleen Richey | paralegal | 3.75 | $50 | $ 187.50 |
| Jennifer Pomerantz | paralegal | 20.20 | $50 | $ 1010.00 |
| Kathy Carmody | associate | 301.50 | $200 | $ 60,300.00 |
| Angela Cottrill | paralegal | 340.00 | $50 | $ 17,000.00 |
| Jennifer Lambert | associate | 70.30 | $200 | $ 14,060.00 |
| Kerri Johnson | paralegal clerk | .50 | $35 | $ 17.50 |
| William Diggs | paralegal | 146.00 | $50 | $ 7,300.00 |
| Kyle Richey | paralegal clerk | 94.75 | $35 | $ 3,316.25 |
| Keith E. Syler | associate | 2.25 | $200 | $ 450.00 |
| Lisa Marshall | paralegal | 172.00 | $50 | $ 8,600.00 |
| Dayna Boatright | paralegal | 10.00 | $50 | $ 500.00 |
| Donald Stiens | associate | 13.70 | $150 | $ 2,055.00 |
| Erin Campbell | associate | 50.00 | $150 | $ 7,500.00 |
| Sarah Hall | paralegal clerk | 14.00 | $35 | $ 490.00 |
| A. Manley | paralegal clerk | 97.10 | $35 | $ 3,398.50 |
| T. Keilty | paralegal clerk | 22.50 | $35 | $ 787.50 |

FEE  TOTAL:          $ 1,011,059.25

First- to- file fees:     (- $ 10,967.75)

EXPENSES:          $ 77,426.68

Office supplies:      (- $ 12.50)

**GRAND TOTAL:      $ 1,077,505.68**

13

## VOLKEMA THOMAS

| Attorney/Paralegal | Experience | Hours | Hourly Rate | Total |
|---|---|---|---|---|
| Frederick Morgan | N/A | 620.4 | $400 | $ 248,160.00 |
| Mary Jones | N/A | 279.5 | $200 | $ 55, 900.00 |
| Jeff Maloon | partner | 169.77 | $250 | $ 42,442.50 |
| Michael Miller | partner | 24.00 | $250 | $ 6,000.00 |
| Craig Scott | partner | 14.25 | $250 | $ 3, 562.50 |
| Dan Volkema | partner | 9.62 | $250 | $ 2,405.00 |
| Deanna Burnett | paralegal | 97.44 | $50 | $ 4,872.00 |
| Francine Brewer | paralegal | 61.7 | $50 | $ 3,085.00 |
| Sarah Burkett | coder | 27.25 | $20 | $ 545.00 |
| Steve Darling | law clerk | 46.25 | $75 | $ 3,468.75 |
| Debbie Hamilton | coder | 22.00 | $20 | $ 440.00 |
| Paula Hammill | paralegal | 57.17 | $50 | $ 2,858.50 |
| Steve Hamilton | coder | 18.5 | $20 | $ 370.00 |
| Gretchen LeMoreau | coder | 43.37 | $20 | $ 867.40 |
| Ashley Maloon | coder | 48.16 | $20 | $ 963.20 |
| Chris Miller | coder | 11.84 | $20 | $ 236.80 |
| Karen Mitchell | paralegal | 17.5 | $50 | $ 875.00 |
| Lesa Maloon | coder | 22.08 | $20 | $ 441.60 |
| Deborah Overly | paralegal | 19.77 | $50 | $ 988.50 |
| Charles Short | paralegal | .84 | $50 | $ 42.00 |
| Rachel Scott | coder | 14.77 | $20 | $ 295.40 |
| Christine Volkema | coder | 50.42 | $20 | $ 1008.40 |
| Patricia Volkema | coder | 7.83 | $20 | $ 156.60 |
| Rod Vedder | coder | 12.67 | $20 | $ 253.40 |
| Tina Zamora | paralegal | 120.76 | $50 | $ 6, 038.00 |

INTERIM FEE TOTAL: $ 386, 285.05

INTERIM  EXPENSES:  $ 23,955.82

**GRAND TOTAL:    $ 410, 240.87**

14

## III. CONCLUSION

For the foregoing reasons, the Relators' motions for attorneys's fees are **GRANTED** in part and **DENIED** in part. **IT IS SO ORDERED**.

cc: Counsel of Record