**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:00-CV-222**

**HAROLD DILBACK** **PLAINTIFF**

**VS.**

**GENERAL ELECTRIC COMPANY** **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiff's Objections to Magistrate Judge Goebel's Order Denying Plaintiff's Motion to Compel (DN 173), the Defendant's Response (DN 177), and the Plaintiff's Reply (DN 192). Also before the Court is the Defendant's Motion to File Surreply (DN 197) and the Plaintiff's Response (DN 200). Fully briefed, this matter now stands submitted.

## I. FACTS

In his Complaint, the Plaintiff asserts one count of retaliation by alleging that the Defendant discharged, threatened, and harassed him for engaging in protected activity under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3731. The Second Amended Complaint (DN 32) also contained a *qui tam* action wherein the Plaintiff and others alleged violations of the FCA on behalf of the United States and against General Electric Company and other defendants. Two of the many allegations made in the *qui tam* action were that the Defendant engaged in a fraud against the United States by failing to use proper procedures in performing fluorescent penetrant inspections and by falsifying vouchering records at a Madisonville, Kentucky General Electric facility. It was alleged that these purported actions resulted in defective aircraft parts being sold to the United States military. However, the *qui tam* action and related claims were dismissed as settled and all that remains is the Plaintiff's Third Amended Complaint (DN 72) against the Defendant alleging retaliation. The Defendant asserts that it terminated the Plaintiff's employment, not to retaliate

against the Plaintiff for engaging in protected activity under the FCA, but because the Plaintiff used unauthorized and potentially unlawful means to gain access to its proprietary computer system.[1]

After the *qui tam* and other related counts and parties were dismissed, the Plaintiff propounded discovery requests upon the Defendant seeking, in part, information that might prove the validity of allegations made in the *qui tam* claim. The Defendant objected to most of the requests that sought to obtain this information on grounds that the information requested was unrelated to the only remaining claim of retaliation. In his Order denying the Plaintiff's Motion to Compel (DN 172), the Magistrate Judge held that proof of the underlying fraud in the *qui tam* action is irrelevant as to the claims or defenses asserted in the Plaintiff's retaliation claim.

The Plaintiff now objects to the Magistrate Judge's Order asserting several bases of error. The first basis of error is on the grounds that the Magistrate Judge erred as a matter of law in holding that the relevant inquiry in a retaliation claim is on the perception of the parties with regards to the fraud and not the existence of the fraud. The second basis of error is that the Magistrate Judge incorrectly determined that proof of the underlying fraud is not relevant to show that the Plaintiff had a "viable" FCA cause of action. The third basis of error is that the Magistrate Judge incorrectly found that proof of the underlying fraud in an FCA retaliation action is not relevant for the purposes of proving motive to retaliate.

---

[1] The Defendant asserts not only that it terminated the Plaintiff for using these purportedly unlawful means to access its computer system, see Def.'s Resp. at pp. 7-8, but also that using unlawful means in order to investigate the alleged fraud is not a protected activity under the FCA, id at pp. 17-18.

## II. STANDARD OF REVIEW

In reviewing a non-dispositive order by a magistrate judge, a court may only modify or set aside such order if it is found to be clearly erroneous or contrary to the law. See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Discovery matters are considered non-dispositive, see Botta v. Barnhart, 475 F. Supp. 2d 174, 185 (E.D.N.Y. 2007); Parrish v. Ford Motor Co., No. 89-6290, 1990 WL 109188, *3 (6th Cir. Aug. 2, 1990), and, therefore, the Magistrate Judge's Order will be reviewed using this standard. An order is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" and is contrary to the law if "it fails to apply or misapplies relevant statutes, case law, or rules of procedure." Botta, 475 F. Supp. 2d at 185 (quotation omitted).

## III. DISCUSSION

The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). They further provide that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Thus, the only information that can be discovered is that which is relevant to the Plaintiff's claim or the Defendant's defenses to that claim. See, e.g., Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 402 (6th Cir. 1998). Under this standard "'it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken . . . unless the information sought is otherwise relevant to issues in the case.'" Id. (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351-52 (1978)). Therefore, information relevant to the Plaintiff's FCA retaliation claim is discoverable whereas information relevant solely to the Plaintiff's former *qui tam* claim is not discoverable.

The FCA creates a cause of action against employers who retaliate against employees who blow the whistle on the employer's fraud against the United States. In pertinent part, the FCA provides:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h). The FCA has been interpreted to require proof by the plaintiff that "she was engaged in a protected activity . . . ." McKenzie v. BellSouth Telecomms., Inc., 219 F.3d 508, 514 (6th Cir. 2000) (protected activity element). "Protected activity" is defined as "that activity which reasonably could lead to a viable FCA action." Id. at 516. The plaintiff must also prove "that her employer knew about [the protected activity]." Id. at 514 (citations omitted). Furthermore, the plaintiff must prove "that the employer . . . discharged or otherwise discriminated against the employee as a result of the protected activity." Id. (citations omitted) (causal connection element). This third element requires proof that "the retaliation was motivated, at least in part, by the employee's engaging in protected activity." Id. n.4 (citations omitted).

Once an employee establishes a *prima facie* case of retaliation, "a presumption of retaliation arises" and the burden shifts to the employer to "rebut that presumption by asserting a legitimate, non-retaliatory reason for the adverse actions." Scott v. Metro. Health Corp., 234 Fed. Appx. 341, 346 (6th Cir. 2007) (citing Balmer v. HCA, Inc., 423 F.3d 606, 614 (6th Cir. 2005)) (applying the McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973) burden-shifting framework used in Title VII discrimination claims to an FCA retaliation claim). If this burden of production is established

by the employer, "[t]he burden then shifts back to [the employee] the show by a preponderance of the evidence that [the employer's] stated lawful reason was a pretext for retaliation." Id. "The employee may meet this burden by persuading the factfinder either directly that a retaliatory reason more than likely motivated the employer or indirectly that the proferred reason for the employment decision is not worthy of belief." Mann v. Olsten Certified Healthcare Corp., 49 F. Supp. 2d 1307, 1317 (M.D. Ala. 1999) (citing Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)).

**A. VIABILITY**

The Plaintiff argues that information related to the purported fraud against the United States is relevant in two ways. First, the Plaintiff argues that such proof is relevant because it can be used to prove that he was investigating and filed a *qui tam* claim related to a "viable" FCA action. The Defendant argues that such proof is not relevant because establishing an actual fraud is not required in a retaliation case.

An FCA retaliation plaintiff is not required to have investigated an *actual* fraud against the United States in order to have engaged in activity that could reasonably have led to a "viable" FCA action. As the Supreme Court has held, proving the underlying FCA action is not an element of an FCA retaliation cause of action. See, e.g., Graham County Soil & Water Conservation Dist. v. U.S. ex rel. Wilson, 545 U.S. 409, 416 n.1 (2005). It is possible for an FCA retaliation plaintiff to engage in activity related to a viable FCA claim even if the accused is innocent. See id. at 416. The Sixth Circuit in McKenzie did not impose any such requirement when it defined the protected activity element of an FCA retaliation action to have a "viability" component.

Instead, the Sixth Circuit imposed a requirement that "actions be reasonably connected to the FCA," McKenzie, 219 F.3d at 515, and that a plaintiff's activity "must relate to 'exposing fraud'

or 'involvement with a false claim disclosure'" Id. at 516 (citations omitted). Therefore, if the plaintiff's activity is unrelated to exposing fraud against the United States in violation of the FCA then the "viability" component would not be satisfied. But if the activity is related to those FCA requirements, then the activity is related to a "viable" FCA action, even if the accused is innocent. The Sixth Circuit was concerned that certain activity simply does not fall within the breadth of the FCA. Id. In U.S. ex rel. Hopper v. Anton, 91 F.3d 1261 (9th Cir. 1996), for example, the Ninth Circuit held that "[v]iolations of laws, rules, or regulations alone do not create a cause of action under the FCA." Id. at 1266. In McKenzie, the Sixth Circuit held that "[a]lthough internal reporting may constitute protected activity, the internal reports must allege fraud on the government." McKenzie, 219 F.3d at 516 (citations omitted). Likewise, the Fifth Circuit has held that, although intracorporate complaints might constitute protected activity under the FCA, the complaints must be "about fraud against the government." Robertson v. Bell Helicopter Textron, Inc., 32 F.3d 948, 951 (5th Cir. 1994) (quotations omitted).

Each of the above examples of "viable" FCA actions relate to the nature of the activity and *not* whether fraud actually existed. They involve matters related to *alleged* fraud and not necessarily *actual* fraud. Here, the Defendant acknowledges that the Plaintiff investigated and filed a "viable" *qui tam* claim. Because the "viability" component of the protected activity element does not require proof that fraud actually occurred, evidence related to the alleged fraud is not discoverable for those purposes.

**B. MOTIVE**

The Plaintiff also argues that proof of the alleged fraud is relevant because it can be used to prove the Defendant's motivation to retaliate. Specifically, the Plaintiff argues that because the

Defendant has asserted a non-retaliatory reason as to why the Plaintiff was terminated, he should be permitted to use evidence of fraud to prove that the stated reason is merely pretext. If the accusations are true, the Plaintiff argues, then the Defendant would have more of a motive to retaliate against the Plaintiff. The Defendant, on the other hand, argues that proof of the alleged fraud is irrelevant for purposes of showing pretext.

When considering a motion to compel "a request for discovery should be considered to be seeking relevant information if there is *any* possibility that the information sought may be relevant to the claim or defense of any party in the action." Invesco Institutional, Inc. v. Paas, 244 F.R.D. 374, 380 (W.D. Ky. 2007) (citing Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter, 211 F.R.D 658, 663 (D. Kan. 2003)) (emphasis in original). Although the parties have placed some emphasis on the fact that the Rules were amended in 2000 to narrow the scope of discovery, "[t]he federal courts, even after the amendment of Rule 26(b) in 2000, have continued to hold that, '[r]elevance for the purpose of Rule 26 is broadly construed.'" Id. (quoting Jade Trading, LLC v. United States, 65 Fed. Cl. 188, 190-91 (2005)) (citations omitted). Furthermore, "[a] party who seeks to avoid disclosure of requested materials 'bears a heavy burden of demonstrating that disclosure will work a clearly defined and very serious injury . . . .'" Id. (quoting Empire of Carolina, Inc. v. Mackle, 108 F.R.D. 323, 326 (S.D. Fla. 1985)) (citations omitted).

It appears to the Court that there is a good possibility that the information sought may be relevant to the Plaintiff's claim—particularly as to pretext. To show pretext, the Plaintiff must show "either directly that a retaliatory reason more than likely motivated the employer or indirectly that the proferred reason for the employment decision is not worthy of belief." Mann, 49 F. Supp. 2d at 1317 (citing Burdine, 450 U.S. at 256). Thus, evidence of motive is extremely relevant in the

pretext analysis. If Plaintiff can show that the documents he was attempting to retrieve reveal the existence of false claims on the part of the Defendant, then such evidence may be probative of the Defendant's motivation. To the extent that the Magistrate concluded that evidence of underlying fraud was not probative of the Defendant's motivation, or that motivation was not relevant to pretext, such was clearly erroneous and contrary to the law and the Plaintiff's objections are sustained.[2]

While the Court finds that evidence related to the purported fraud is discoverable and relevant insofar as it relates to showing pretext, the Court believes that the Plaintiff's requests are overly broad. The Plaintiff does not need to discover and prove every alleged false claim. Plaintiff's requests should be limited. The Plaintiff has identified six employees by name and seeks information on vouchers for six specific dates from January 21, 2002 to January 10, 2003. Confining his requests to these individuals and these dates would appear to be sufficient to allow Plaintiff the latitude to make his case without turning this retaliation case into the false claims action.

## IV. CONCLUSION

For the foregoing reasons, the Plaintiff's Objections (DN 173) are **SUSTAINED**; and Plaintiff's Motion to Compel (DN 151) Requests for Production Nos. 1-3, 12-16, and 23-25 and Interrogatory Nos. 5-7 is **GRANTED in part and DENIED in part.** The Plaintiff may propound a more narrowly tailored document request consistent with this order.

---

[2] The Court is sensitive to the concern that the trial of this case will turn into a trial of the *qui tam* action if this discovery is allowed. At the proper time, the Court will endeavor to prevent that from happening.

The briefs for the parties have raised additional issues. Specifically, the Defendant argues that because the Plaintiff engaged in unlawful activity in pursuing his FCA claim, the Plaintiff cannot establish a *prima facie* case for FCA retaliation. The Plaintiff contradicts this argument. These issues are not properly before the Court at this time. They will be addressed at the summary judgment stage. For this reason, the Defendant's Motion for Leave to File Surreply (DN 197) is **DENIED**.

**Joseph H. McKinley, Jr., Judge**
**United States District Court**

September 19, 2008

Copies to: Counsel of record
USMJ Goebel